UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QIANA STAR MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. EDCV 14-00241 AN<br><br>MEMORANDUM AND ORDER |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising one disputed issue. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends that the Administrative Law Judge ("ALJ") failed to give proper consideration to the opinion of the examining neurologist, Robert A. Moore, M.D. (JS 4-11.)

Dr. Moore conducted a neurological evaluation of Plaintiff in June 2012. (AR 342-46.) This evaluation occurred after Plaintiff's administrative hearing, but before the ALJ issued his decision denying Plaintiff's applications for benefits. (AR 26-32, 39-56, 342-

46.) Plaintiff complained of pain radiating from the neck through the right upper extremity, tenderness over the right lower paracervical and right mid-trapezius muscles, numbness and weakness in the right arm, diminished sensation to soft touch in the right upper extremity, and difficulty performing fine, coordinated movements with the fingers on her right hand. (AR 342-43, 345.) Plaintiff reported that she had been diagnosed with multiple sclerosis in 2010. (AR 342.) Dr. Moore noted that a February 2010 MRI scan of Plaintiff's brain revealed white matter lesions, which might indicate multiple sclerosis, while a March 2012 MRI scan of Plaintiff's neck was normal. (AR 343.) Plaintiff's medical records referenced right carpal tunnel syndrome, diminished right upper extremity strength of 4/5, intermittent diplopia (double vision), and blurred vision. (AR 343.) On examination, Dr. Moore found that Plaintiff exhibited questionable left internuclear ophthalmoplegia (impaired lateral gaze of the eye), diminished right upper extremity strength of 4/5, a slight decrease in the distal fine coordinated movements of the fingers on the right hand, slightly slowed finger-nose-finger testing with the right arm, and grip strength in the right hand of 0 pounds of force, as measured by the Jamar dynamometer. (AR 344-45.) Dr. Moore diagnosed possible/probable multiple sclerosis, and found that Plaintiff had legitimate right upper extremity complaints. (AR 345.) Dr. Moore opined that Plaintiff was capable of lifting and carrying 15 pounds frequently and 30 pounds occasionally, but would be limited as follows: no more than occasional pushing and pulling with the right arm and occasional simple gripping and distal fine coordinated movements with the right hand and fingers; moderate difficulty operating hand controls; and no climbing, balancing, or working at unprotected heights. (AR 345.)

    Although the ALJ noted that the diagnostic test results and Plaintiff's symptoms did not clearly support Dr. Moore's opinion that Plaintiff suffers from multiple sclerosis, the ALJ found that possible multiple sclerosis was a severe impairment. (AR 28.) As for Plaintiff's right upper extremity complaints, the ALJ found that the medical evidence failed to establish a medically determinable impairment. (AR 28.) The ALJ rejected Dr. Moore's opinion that Plaintiff would have moderate difficulty operating hand controls,

1 and would be limited to no more than occasional pushing and pulling with the right arm
2 and occasional simple gripping and distal fine coordinated movements with the right hand
3 and fingers. (AR 31.) Instead, the ALJ assessed Plaintiff with a residual functional
4 capacity ("RFC") for light work, with no forceful grasping, gripping, handling or
5 fingering.[1] (AR 30-31.) The ALJ found that this RFC was warranted, as Dr. Moore's
6 opinion was inconsistent with Plaintiff's "conservative treatment" and "the persistent
7 finding of minimal weakness" in Plaintiff's right upper extremity. (AR 28, 31.) The ALJ
8 also found that the opinions of the state agency medical consultants were consistent with
9 this RFC.[2] (AR 30-31.)

10       The ALJ did not offer specific, legitimate reasons for rejecting Dr. Moore's
11 assessment of Plaintiff's right upper extremity limitations. *See Lester v. Chater*, 81 F.3d
12 821, 830-31 (9th Cir. 1996) (if a treating or examining physician's opinion on disability
13 is controverted, it can be rejected only with specific and legitimate reasons supported by
14 substantial evidence in the record). Merely noting that Plaintiff had a history of minimally
15 diminished strength in the upper right extremity was not sufficient. *See Embrey v. Bowen*,
16 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by
17 sufficient objective findings . . . does not achieve the level of specificity our prior cases
18 have required.") While a lack of supporting clinical findings may be a valid reason for
19 rejecting a physician's opinion, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989),
20 in this case, the ALJ failed to acknowledge the objective findings and assessments of
21 record that may have offered support for Dr. Moore's conclusions. In addition to finding

---

[1]     The ALJ further found that Plaintiff was limited to occasional stooping, bending, and climbing of stairs and ramps, and was precluded from climbing ladders, work at unprotected heights or around dangerous machinery, and sustained verbal communication with the public, coworkers or supervisors. (AR 30, 31); *see* 20 C.F.R. §§ 404.1567(b), 416.967(b).

[2]     Based on the assessed RFC and the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing her past relevant work as a cafeteria worker (Dictionary of Occupational Titles ("DOT") 311.677-010) and packager of medical supplies (DOT 920.587-018), as those jobs were actually performed. (AR 30-32, 54-55.)

1  that Plaintiff had diminished strength (4/5) in the right upper extremity, Dr. Moore
2  reported that Plaintiff exhibited a grip strength of 0 pounds of force with the right hand
3  on the Jamar dynamometer, a slight decrease in distal fine coordinated movements of the
4  right fingers, slightly slowed finger-nose-finger testing with the arm, tenderness over the
5  right lower paracervical and right mid-trapezius muscles, and diminished sensation to soft
6  touch in the right upper extremity. (AR 343-45.) Plaintiff's earlier medical records also
7  show that Plaintiff experienced paresthesia (tingling and numbness), decreased sensation
8  to pinprick and vibration (proximally and distally), and decreased motor strength in the
9  right upper extremity (3+/5). (AR 227, 228, 247, 333, 340.) Thus, the ALJ's suggestion
10 that the medical evidence established only minimal weakness in the right upper extremity
11 was conclusory and contradicted by the record. *Embrey*, 849 F.2d at 421-22 ("The ALJ
12 must do more than offer his conclusions. He must set forth his own interpretations and
13 explain why they, rather than the doctors', are correct."); *Reddick v. Chater*, 157 F.3d
14 715, 725 (9th Cir. 1998).

15       The ALJ's finding that Plaintiff's treatment was conservative was also not a valid
16 reason for rejecting Dr. Moore's opinion. (AR 29, 31.) The record shows that Plaintiff
17 followed the treatment plans recommended by her physicians, and took prescribed
18 medications, including gabapentin (Neurontin) and steroids (prednisone) for her pain and
19 symptoms. (AR 49, 321, 331, 332, 420.) The ALJ did not identify alternative,
20 less-conservative treatment options. Rather, the ALJ described Plaintiff's medical
21 treatment as conservative because Plaintiff had not undergone a second brain MRI or any
22 spinal fluid studies (lumbar punctures). (AR 29, 31.) This reason was not a valid basis for
23 rejecting Dr. Moore's opinion, as the ALJ failed to explain how the administration of
24 such diagnostic procedures would have been indicative of more aggressive treatment.
25 Moreover, the record shows that Plaintiff had already undergone a number of diagnostic
26 tests. Plaintiff underwent a electromyogram ("EMG") and nerve conduction studies
27 ("NCS") in 2009, an MRI of the brain in 2010, an MRI of the cervical spine in March
28

2012, and a visual evoked potential ("VEP") test in 2012.[3/] (AR 229, 247, 319, 330, 340, 461.) In sum, Plaintiff's course of treatment, including diagnostic testing ordered by Plaintiff's physicians, did not constitute a legitimate basis for rejecting Dr. Moore's assessment of Plaintiff's limitations.

Finally, the ALJ erred in rejecting Dr. Moore's opinion in favor of the opinion of the non-examining medical consultants. (AR 31, 279-84, 285-87, 316-17.) A non-examining physician's opinion cannot by itself constitute substantial evidence to support the ALJ's rejection of an examining physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831-32. Furthermore, the medical consultants in this case did not have the benefit of reviewing medical records that post-dated their evaluations, including Dr. Moore's neurological evaluation report from June 2012. (AR 321, 330, 331, 332, 333, 342-46, 420, 461, 462.) Thus, their opinions did not provide substantial evidence for the ALJ's rejection of Dr. Moore's opinion.

The ALJ's error in rejecting Dr. Moore's opinion cannot be considered harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (a harmless error is one which is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole") (quoting *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (the relevant inquiry in harmless error analysis "is whether the ALJ's decision remains legally valid, despite such error"). The ALJ posed hypothetical questions to the VE that did not adequately reflect Dr. Moore's findings. (AR 54-55.) The record, therefore, is inconclusive as to whether the VE's testimony and the ALJ's ultimate disability determination would have been different, had the ALJ accepted Dr. Moore's findings and opinion. *See Embrey*, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions

---

[3/] Plaintiff's most recent medical record reflects that in July 2012, Plaintiff's neurologist was recommending that Plaintiff undergo a lumbar puncture to assist in the multiple sclerosis diagnosis. (AR 461-62.) However, the lumbar puncture had not yet taken place, as Plaintiff was requesting sedation for the procedure. (AR 461-62.)

of the particular claimant, including, for example, pain and an inability to lift certain weights."). It is thus necessary for the ALJ to further develop the record, and give consideration to Dr. Moore's findings and opinion on remand.

Accordingly, Plaintiff is entitled to remand on Issue #1.

## ORDER

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds a remand is appropriate because there are unresolved issues that, when properly resolved, may ultimately still lead to a not disabled finding. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotation marks and citation omitted); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Accordingly, the present case is remanded for further proceedings consistent with this Memorandum and Order.

///

///

IT IS THEREFORE ORDERED that a judgment be entered reversing the Commissioner's final decision and remanding the case so the ALJ may make further findings consistent with this Memorandum and Order.

DATED: October 29, 2014

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE